IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

IGDALIA GARCIA-LUCIANO,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.  23-1236 (HRV)

**OPINION AND ORDER**

### I.      INTRODUCTION

Igdalia Garcia-Luciano, ("Plaintiff" and/or "Ms. Garcia-Luciano"), moves this Court to review the final administrative decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability benefits under the Social Security Act. (Docket No. 3).  Plaintiff alleges that the decision was not supported by substantial evidence. (Docket No. 16). The Commissioner filed his brief requesting affirmance of his decision. (Docket No. 20).  After carefully reviewing the record and for the reasons stated below, the Commissioner's decision is AFFIRMED.

### II.     LEGAL FRAMEWORK

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may obtain review of the final decision of by the Commissioner of Social Security. Upon consideration of the pleadings and transcript of record, the Court "shall have the power to enter a judgment . . .

affirming, modifying or reversing the decision of the he Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id*. In addition, the statute provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id*. Substantial evidence "is more than a mere scintilla . . . [i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971)(*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Is important to note that the scope of my review is thus limited. I am tasked with determining whether the Administrative Law Judge ("ALJ") employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed only if it was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Five-Step Sequential Evaluation Process

The Social Security Act ("SSA") provides a five-step evaluation process to determine disability when applying for disability insurance benefits. 20 C.F.R. § 404.1520(a)(4). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id*.

Step one considers claimant's work activity, that is, whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the person is, then she is not disabled under the Act. *Id*. The second step of the process is to determine whether plaintiff has a physical or mental impairment, or a combination of impairments, that is severe and meets the Act's duration requirement. 20 C.F.R. §

404.1520(a)(4)(ii). Plaintiff has the burden of proof at Steps One and Two. Step Three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). At this step, if plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, she is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Now, if the plaintiff is not determined to be disabled at this step, her residual functional capacity ("RFC") is assessed. 20 C.F.R. § 404.1520(a)(4), (e). Once the ALJ determines the RFC, the inquiry proceeds to step four. This step compares the plaintiff's RFC to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do her past relevant work, she is not disabled. *Id*. Finally, at step five, the plaintiff's RFC is considered alongside her "age, education, and work experience to see if [she] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If [she] can make an adjustment to other work, she is not disabled; if she cannot, she is disabled. *Id*.

### III.   BACKGROUND AND PROCEDURAL HISTORY

Ms. Garcia-Luciano applied initially for Social Security Disability Insurance ("SSDI") benefits on June 22, 2020, alleging a disability commencement date of October 3, 2019. *See* Transcript of Social Security Proceedings ("Tr."), Docket No. 14 (Tr. 939-943). Plaintiff's symptoms where trigger fingers, chronic kidney and diabetes mellitus type 1 and 2, among other alleged conditions. On September 4, 2020, her claim was denied at the initial stage; and again on reconsideration on November 24, 2020. (Tr. 827-830, 832-834).

Ms. Garcia-Luciano requested a hearing on December 21, 2020. A telephone conference hearing was held on June 2, 2022. (Tr. 15-39). Present at the telephone

hearing[1] were plaintiff's attorney[2], and Ms. Luisa Suess, an impartial vocational expert, who testified at the hearing. (Docket No. 16 – Plaintiff's Brief). Ms. Garcia-Luciano also testified at the hearing. (*Id.*). On June 21, 2022, the ALJ issued her written decision concluding that Ms. Garcia-Luciano was not disabled under the Act. (Tr. 15-39).

In her written decision, the ALJ found that Plaintiff did not engage in substantial gainful activity (Step One) (Tr. 25). At Step Two, she found that Plaintiff had the following severe impairments: trigger fingers in both hands, chronic kidney disease, diabetes mellitus types 1 and 2, diabetic polyneuropathy, obesity, adjustment disorder with mixed anxiety and depressed mood, mayor depressive disorder, panic disorder, and generalized anxiety disorder. (*Id.*) As non-severe impairments, Plaintiff was found to have hypertension and hyperlipidemia, which did not cause more than a minimal limitation of physical or mental ability to do basic work activities. (*Id.*).

Further, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the ones listed at 20 CFR Part 404, Subpart P, Appendix 1. (Step Three) (Tr. 26). For instance, abnormality of a major joint in any extremity was not met because evidence did not show chronic joint pain or stiffness and abnormal motion, instability, or immobility of the affected joints. *Id.* Also, the evidence did not show an impairment-related physical limitation. *Id.* Peripheral neuropathy was also not established because there was not a

---

[1] The hearing was consented to by Plaintiff to be held by telephone due to the extraordinary circumstances presented by the Coronavirus Pandemic. (*See* Tr. 892 and 893).

[2] Attorney Doris Aponte appeared in substitution of attorney William Pagan, Plaintiff's counsel of record. (*See* Plaintiff's Brief at Docket No. 16).

medical record of a disorganization of motor function. *Id.* Plaintiff's obesity did not meet the severity of a listed impairment or a combination of other impairments either. *Id.* With respect to her diabetes condition, although it is no longer a listed impairment, the ALJ considered it. However, it did not meet or equal any of the listed impairments as assessed under the Social Security Ruling 14-2p or 14-3p. *Id.* Lastly, Plaintiff's mental impairments were considered singly and in combination and did not meet or medically equal the criteria of listings 12.04 and 12.06. (Tr. 27).

     The ALJ considered "paragraph B" and to satisfy the criteria, the mental impairments must result in one extreme limitation[3] or two marked limitations[4] in a broad area of functioning. In her written decision, the ALJ determined that Plaintiff has a moderate limitation in understanding, remembering, or applying information. Plaintiff testified that she has difficulty remembering generally and completing tasks, but also admitted that she could perform simple maintenance, prepare meals, and shop. Furthermore, the record shows that Plaintiff was able to provide information about her health, answer questions from medical providers, and tested normal on a memory exam. *Id.* Regarding her ability to interact with others, the ALJ concluded that Plaintiff had mild limitations. Plaintiff alleged she has difficulty getting along with others, although statements from Plaintiff revealed that she is able to shop, spend time with family and

---

[3] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 27).

[4] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. (Tr. 27).

live with others. In addition, medical evidence showed that Plaintiff was described as pleasant and cooperative. *Id*.

As to Plaintiff's ability to concentrate, persist or maintain pace, the ALJ concluded she has moderate limitations. During testimony, Plaintiff indicated that she has problems concentrating, focusing generally and completing tasks. *Id*. Records showed diminished concentration and attention on exams but, pursuant to her statements, she is able to prepare meals, watch television, and manage funds. *Id*. Regarding her ability to adapt or manage herself, the ALJ concluded that she has moderate limitations. Plaintiff testified she has difficulties handling change and managing her mood. Notwithstanding, she stated that she is able to handle selfcare and personal hygiene. *Id*. Therefore, in her written decision, and as to this specific step, the ALJ indicated that the "paragraph B"[5] criteria was not satisfied because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitations. In addition, the ALJ considered whether the "paragraph C" was satisfied. She concluded that the evidence presented failed to establish the presence of the "paragraph C" criteria.[6]

The ALJ then determined Plaintiff's RFC and found that she has the capacity to perform light work as defined in 20 CFR 404.1567(b), except the Plaintiff can handle and finger frequently. (Tr. 28). She can stoop, kneel, crouch, crawl and climb ramps and

---

[5] The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process. (Tr. 28).

[6] The "paragraph C" criteria requires that a claimant have a minimal capacity to adapt to changes in their environments or demands not already a part of their daily life. (Tr. 28).

stairs occasionally, but never climb ropes, ladders, or scaffolds. *Id*. Additionally, Plaintiff can understand, remember, and carry out simple instructions and perform simple tasks, work with objects and data rather than with people, in a goal-oriented setting and that she can adapt to occasional changes in a routine work environment. *Id*. The ALJ stated that in making these findings, she considered all symptoms alleged and the extent to which those symptoms were consistent with the objective medical evidence as required by 20 CFR 404.1529 and SSR 16-3p.  She also took into consideration prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c. The ALJ followed the required two-step process to determine if there was a medically determinable physical or mental impairments that could reasonably be expected to produce plaintiff's pain and other symptoms.[7] *Id*.  The conclusion reached was that while the impairments could reasonably be expected to cause the symptoms, the intensity, persistence and limiting effects of said symptoms was not entirely consistent with the evidence on record. *Id*. at 29.

      Lastly, at the last two steps of the process, the ALJ determined that Plaintiff was unable to perform any past relevant work (Step four), and considering her age, education, work experience, and RFC, there were jobs that exist in the national economy that Plaintiff can perform such as: Garment Sorter, Price Marker and Laundry Folder. Consequently, Plaintiff was not disable under the Social Security Act. (Step 5)(Tr. 31-33).

---

[7] At the first step, a medically determinable impairment is one that can be shown by medially acceptable clinical or laboratory techniques, that could reasonably be expected to produce pain or another symptom. Secondly, the ALJ must evaluate the intensity, persistence and limiting effects of the underlying physical or mental impairment, to determine the extent to which they limit work-related activities. (Tr. 28-29).

On June 21, 2022, Ms. Garcia-Luciano requested review of the ALJ's decision to the Appeals Council, and on March 15, 2022, the same was denied. At that time, the Commissioner's decision became final. (Tr. 1-8). On May 11, 2023, Ms. Garcia-Luciano filed her Social Security Complaint in this Court. (Docket No. 3). On August 3, 2023, the Social Security Transcript was filed. (Docket No. 14). The parties have fully briefed their respective positions. (Docket Nos. 16, 20 and 23).

**IV.    ANALYSIS**

In her brief, Ms. Garcia-Luciano raised the following issues: (1) whether the ALJ's assessment of plaintiff's physical RFC is supported by substantial evidence, specifically, failure to correctly assess obesity and carpal tunnel syndrome; (2) that the Commissioner erred in her assessment of Plaintiff's mental residual functional capacity in that the ALJ failed to incorporate interaction limitations on the MRFC; (3) whether the Commissioner failed to properly assess and evaluate medication side effects; and (4) whether remand is necessary with respect to the Step 5 findings due to a conflict between the vocational expert testimony and the DOT. (Docket No. 16). I address the issues in the same order.

**A.    Assessment of RFC not Supported by Substantial Evidence**

Plaintiff first alleges in her brief that the ALJ erred because she ignored and did not discuss non-severe medically determinable impairments and the impact that those conditions had on Plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular and continued basis. (*See* Docket No. 16 at 17-18). The conditions that the ALJ did not discuss were high blood pressure, osteoporosis, and migraine headaches. *Id*. These conditions have no bearing in this case, except perhaps high blood pressure, because Plaintiff did not suffer from them. The whole discussion at

pages 16 and 17 of Plaintiff's brief appears to be from a different case.[8] To be sure, the conditions that the ALJ determined as severe impairments were trigger fingers in both hands, chronic kidney disease, diabetes mellitus type 1 and 2, diabetic polyneuropathy, obesity, adjustment disorder with mixed anxiety and depressed mood, mayor depressive disorder, panic disorder, and generalized anxiety disorder. (Tr. 25). As non-severe impairments, the ALJ found hypertension and hyperlipidemia. *Id.* I easily dispose of this argument because it clearly was included in the brief by mistake.

### 1. *Assessment of obesity as per SSR 19-2p*

Ms. Garcia-Luciano alleges that the ALJ failed to correctly assess obesity because she neglected to make "specific factual findings" as required by SSR 19-2p and to meaningfully consider the effects of her obesity condition individually and in combination with her other impairments at step three and at every subsequent step. This failure to make specific findings regarding obesity-related limitations warrants a remand according to the Plaintiff.

In her decision, the ALJ listed obesity as a severe condition/impairment but found that Plaintiff's obesity did not meet the severity of a listed impairment when considered singly or combined with other impairments. (T. 26). There is no question that the ALJ took into consideration Plaintiff's obesity, even though there is not an independent listing for said condition. In fact, the ALJ relied on the opinion of state agency consultant Dr. Vicente Sanchez, who discussed diabetes and obesity as part his medical evaluation.

---

[8] Counsel is encouraged to carefully proofread and edit the work that is submitted to the Court.

Contrary to the argument of the Plaintiff, the ALJ mentioned obesity and her BMI when explaining her RFC determination (*See* Tr. 30) and adjusted accordingly the physical limitations to Plaintiff's RFC. All this in compliance with SSR 19-2p. For these reasons, I find that the ALJ fully took into consideration Plaintiff's obesity to determine her RFC and that Plaintiff has not met her burden of demonstrating that a more restricted physical RFC was warranted based on said impairment. *See Soto-Martinez v. Kijakazi*, Civil No. 21-1445 (CVR), 2022 WL 3593359, 2022 U.S. Dist. LEXIS 151649 at *12 (D.P.R. Aug. 23, 2022).

### 2. Assessment of Carpal Tunnel Syndrome

Plaintiff also alleges that the ALJ did not consider her medically diagnosed impairment of carpal tunnel syndrome. (Docket No. 16). In her decision, however, the ALJ determined that trigger fingers on both hands was among the severe conditions Ms. Garcia-Luciano suffered from and considered the impairment in her assessment of Plaintiff's RFC. (Tr. 25). The ALJ took into consideration not only the medical evidence on record, but also Plaintiffs' testimony during the hearing, where she was questioned about the carpal tunnel condition (Tr. 52, 59-60), and talked about experiencing burning sensations in her hands. (Tr. 29 and 57). For instance, the ALJ considered that Plaintiff received a right thumb and middle trigger finger release in August 2019 and a left ring trigger finger release in May 2022. (Tr. 29). With both releases, Plaintiff still was able to grip, grasp, pinch and used her fingers without difficulty. (*Id.*). In addition, the ALJ considered the opinions of state agency medical consultants, who concluded that Plaintiff had no gross motor or sensory deficits except right hand weakness and pain. (Tr. 31). And it is clear from the record that in their evaluations of Plaintiff, both medical

consultants considered carpal tunnel syndrome and trigger fingers. (Tr. 790, 793 and 799). While the ALJ may not have mentioned by name carpal tunnel syndrome, manipulative limitations were assessed as part of the RFC determination. *See Whitzell v. Astrue,* 792 F. Supp. 2d 143, 150 (D. Mass. 2011)(the ALJ did not mention claimant's myofascial pain disorder by name but addressed her back pain at length).  In view of the foregoing, I find that remand is not warranted with respect to this claim of error.

**B. Assessment of Ms. Garcia-Luciano MRFC – Interaction Limitations**

Next, Ms. Garcia-Luciano contends that the ALJ erred in the RFC finding because the ALJ failed to incorporate interaction limitations into Plaintiff's MRFC. (Docket No. 16 at page 23). The ALJ stated that Plaintiff suffers from adjustment disorder with mixed anxiety and depressed mood, mayor depressive disorder, panic disorder and generalized anxiety disorder. (Tr. 25). Plaintiff's mental impairments were considered singly and in combination. (Tr. 27).  Relevantly, as to interacting with others, the ALJ concluded that Plaintiff had mild limitations.  Plaintiff faults the ALJ for finding that she is better at working with objects and data rather than people, but not incorporating limitations regarding inevitable interactions with supervisors and co-workers after properly considering both her medical conditions and her reported symptoms.

At the hearing, Ms. Garcia-Luciano testified that she had difficulty getting along with others, but based on her statements, she was also able to shop, spend time with her family, and live with others. She is described in medical records as pleasant and cooperative. *Id.* Thus, in the ALJ's view, while Plaintiff suffered from depression, anxiety, and frequent panic attacks, her reported subjective symptoms and the observations of

depression and anxious moods at her examinations, had to be balanced against other objective observations such as Plaintiff appearing calm and cooperative. (Tr. 30, 538). Further, normal findings were reflected in mental health status examinations, (Tr. 565, 578, 591, 623, 708, 712, 716, 726, 751 and 1779), and the record demonstrated a high degree of functioning with respect to daily living. The Plaintiff's alleged inability to socialize was also contemplated in the RFC where the ALJ limited her to jobs that require zero interactions with the public, and minimal interaction with other people like co-workers and supervisors. The record thus supports a finding that the limitations imposed by the ALJ in her MRFC assessment are based on substantial evidence and that Plaintiff has not carried her burden to show otherwise.

Again, I need to point out that in her brief, and for a second time, Plaintiff submitted inaccurate information. Under the heading of this claim of error, and I suppose as an additional argument seeking reversal, Plaintiff states that the ALJ did not take into consideration interaction limitations such as ability to accept instructions and to appropriately respond to criticism from supervisors. As per the brief, these abilities are critical to perform unskilled work like Plaintiff's prior relevant work as "Plastic Hospital Assembler." (Docket No. 16 at page 26). Ms. Garcia-Luciano's past relevant work was assembling watches.

This appears to be another situation of copying and pasting from a different case. And Plaintiff acknowledges as much in her reply by explaining that the sentence was included as an involuntary error. Normally, a mishap like this would be enough to find waiver. *See Rodriguez-Alicea v. Comm's of Social Sec.*, Civil No. 22-1187 (MEL), 2023 WL 6370397, 2023 U.S. Dist. LEXIS 176064 at *9-10 (D.P.R., Sept. 29, 2023).

Notwithstanding, to the extent that Plaintiff asks that the involuntary error be overlooked, but not the substance of the argument, I find that even if not waived, the claim of error fails essentially for the same reasons set forth above. Substantial evidence supports the ALJ's conclusions regarding Plaintiff's mental conditions and the limitations they impose on her ability to interact with others.

**C.     Medication Side Effects**

As to this issue, Plaintiff alleges that the ALJ failed to discuss and/or take into consideration the effects the intake of medication has on her. Plaintiff testified at the hearing regarding medication side effects such as sleepiness (and the consequential inability to drive) and skin allergies. (Docket No. 16 at page 27).[9] Ms. Garcia-Luciano claims that not discussing the medication side effect of drowsiness is by itself reversible error, and that even though the ALJ did mention that Plaintiff "was very tired during the

---

[9] Plaintiff was asked about her emotional condition as following:

> ALJ: "And those medications help you to manage these symptoms?"
> Ms. Garcia-Luciano: "Not much."
> ALJ: "Do any of these medications cause any side effects?"
> Ms. Garcia-Luciano: "Yes, the Klonopin, With Klonopin, I feel down, I can't drive or anything like that."
> ALJ: "When you say "lo" is that you are sluggish, sleepy, or what do you mean?"
> Ms. Garcia-Luciano: "Yes, sleepy, sleepy."

(Docket No. 16 at page 27 - Plaintiff's Brief and Tr. 64). In addition, she testified that the tape and sensor from her insulin pump caused her "skin allergies, burning and swelling, and that she had to stop using them for periods of time which caused elevated amounts of sugar in her blood and cannot use other treatments because her pancreas was no longer producing insulin and the pump was her only resource, this been recommended by her endocrinologist Dr. Denisse Caro." (Docket No. 16 at page 28).

day", the failure to discuss the impact that such tiredness could have on her ability to engage in substantial gainful activity, likewise, warrants remand. *Id.*

Unquestionably, the ALJ was required to consider the side effect of Plaintiff's medication in the assessment of her RFC. SSR 96-8p, 1996 SSR LEXIS 5 at *13-14. The ALJ indeed discussed the allergic reaction to the medical tape and noted Plaintiff's difficulty controlling her blood sugar. (Tr. 29). With respect to "sleepiness", the ALJ also addressed it acknowledging Plaintiff's difficulty concentrating, focusing, or completing tasks. (Tr. 27). Thus, in her written decision, after considering, among other things, the side effects of medication—which is all that she is required to do under SSR 96-8p—the ALJ limited Plaintiff's residual capacity to understanding, remembering, and carrying out simple instructions, and performing simple tasks in a goal-oriented setting, all while being capable of adapting to occasional changes in a routine work environment. (Tr. 28).

It is clear to me that the ALJ adequately and reasonably took into account the side effects of medication when it limited Plaintiff to unskilled jobs such as garment sorter, laundry folder and price marker; jobs that did not expose her to environmental hazards or required her to drive or operate machinery. It should be noted that the findings regarding side effects of medication are based on Plaintiff's testimony about her symptoms. The lack of objective evidence would by itself be grounds to give very little weight to them in the RFC assessment. *Aleman v. Berryhill*, Case No. 17-cv-20041-JJO, 2017 WL 6730070, 2017 U.S. Dist. LEXIS 212944 at 8 43 (S.D. Fla., Dec. 29, 2017). Yet, the ALJ at least partially gave credence to the symptoms and apportioned RFC limitations accordingly. Therefore, I must reject Plaintiff's claim of error with respect to medication side effects.

D. **Vocational Testimony and DOT**

In her last claim of error, Ms. Garcia-Luciano avers that all the jobs provided by the vocational expert ("VE") for the Step 5 finding, have a reasoning level of 2 as per the DOT. DOT reasoning level 2 jobs require the ability to understand and carryout *detailed* instructions. Plaintiff submits that the failure of the ALJ to resolve an apparent conflict with her assessed limitation to understanding, remembering and carrying out *simple* instructions, warrants remand. (Docket No. 16 at page 29). Plaintiff further maintains that as per SSR 004-4p, the ALJ was required at the hearing to obtain an explanation for this apparent conflict and provide a resolution. *Id*.

As previously noted, based on the testimony of the vocational expert and considering her age, education, work experience and RFC, the ALJ concluded that Ms. Garcia-Luciano would be able to perform the requirements of the following representative occupations: garment sorter, laundry folder and price marker—all three occupations requiring a Specific Vocational Preparation ("SVP") of two. (Tr. 33). In addition, the ALJ determined that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. *Id*.

Under SSR 00-4p, before relying on VE evidence to support a determination that an individual is not disabled, an ALJ as adjudicator must resolve conflicts between the vocational evidence and information in the DOT. *See Cruz-Madera v. Saul*, No. 19-01320-FDS, 2021 WL 9100419; 2021 U.S. Dist. LEXIS 260255 at *36-37 (D.P.R. Feb. 26, 2021). However, an ALJ is not required to resolve conflicts between the VE's testimony and the DOT pursuant to SSR 00-4p, when the conflict was neither apparent nor identified at the hearing. *Id*. at 37; *see also Donahue v. Barnhart*, 279 F.3d 441, 446-47

15

(7th Cir. 2002). In this case, Ms. Garcia-Luciano's counsel did not identify at the hearing any conflicts between the VE's testimony and the DOT. Raising the discrepancy in this forum is too little too late. *See Donahue*, 279 F.3d at 447.

Regardless, even if the issue was properly before me, it would fail on the merits. In this case, the ALJ posed a hypothetical to the VE assuming that Plaintiff "can understand, remember, and carry out simple instructions and do simple tasks with objects and information rather than people." (Tr. 66). Based on that hypothetical, the VE identified jobs in the national economy with an SVP of two. These were the occupations that the ALJ ultimately found at Step 5 that Plaintiff could perform.

District Court's in the First Circuit have held that an ability to carry out simple instructions and perform simple tasks is consistent with work that the DOT defines as requiring a reasoning level of 2. *See Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 U.S. Dist. LEXIS 98294, 2010 WL 3361841 at *3 (D. Me. Aug., 24, 2010); *see also Sue M. v. Berryhill*, No. 1:17-cv-00303-NT, 2018 U.S. Dist. LEXIS 130676, 2018 LWL 3698906 (D. Me. Aug. 3, 2018). In other words, a limitation to simple tasks and instructions is not inconsistent with "detailed but uninvolved" instructions as used in the DOT's reasoning level 2.

A different scenario would have existed if the RFC had provided for "short and simple" instructions inasmuch as one does not equate the other for purposes of a GED reasoning level of 2. *Linwood C. v. Kijakazi*, No. 22-cv-00013-LEW, 2022 WL 10337867, 2022 U.S. Dist. LEXIS 189456 at *10-11 (D. Me. Oct. 18, 2022). When the DOT level 2 reasoning defines the ability to understand and carry out "detailed but uninvolved" instructions, the operative term "detailed" refers not to the complexity of the instruction,

but to its length. *Id.* at 11 (*citing Buckwater v. Acting Comm'r of Soc. Sec.*, 5 4th 1315, 1323-24 (11th Cir. 2021) *and Lawrence v. Saul*, 941 F.3d 140, 142 (4th Cir. 2019)). If the ALJ had imposed a limitation on Plaintiff to follow both short and simple instructions, the identification of jobs that she can perform with a DOT level 2 reasoning would have been inconsistent and remand might have been necessary. But that is not the case here. The ALJ's unchallenged limitation to simple instructions, is not inconsistent with jobs requiring the ability to perform "detailed" instructions. Put differently, the finding that Plaintiff can perform jobs in the national economy that require her to follow detailed instructions, is not inconsistent with a finding that she has the ability only to understand, remember and carry out "simple" instructions. Consequently, I must also reject the asserted claim of error.

## V. CONCLUSION

In view of the reasons outlined above, I find that the decision of the Commissioner to deny disability benefits to Plaintiff is supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby AFFIRMED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 2nd day of February, 2024.

<u>S/Héctor L. Ramos-Vega</u>
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE